L. Homer Price, Joseph Day, Harold Thurnau and Harold Rapalee, Plaintiffs-Appellants, v. Elmer W. Ackmann, Fred L. Ackmann, Frederick J. Ackmann and Harriett L. Ackmann, Defendants-Appellees.

Gen. No. 10,450.

Opinion filed July 12, 1951. Rehearing denied December 13, 1951. Released for publication December 13, 1951.

AUSTIN HANSEN, RANSTEAD S. LEHMANN, and PAUL M. HAMILTON, all of Elgin, for appellants.

ARTHUR L. PAULSON, and HAROLD H. JORDAN, both of Elgin, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

The plaintiffs, L. Homer Price, Joseph Day, Harold Thurnau, and Harold Rapalee, filed their complaint in the circuit court of Kane county seeking to enjoin the defendants, Elmer W. Ackmann, Fred L. Ackmann, Frederick J. Ackmann, and Harriett L. Ackmann, from operating a woodworking mill in an area zoned as "A Residential" and praying for an order requiring the abatement by the defendants of a building allegedly erected by them without a building permit and in violation of a zoning ordinance of the City of Elgin. To this complaint, the defendants filed their answer denying most of the material allegations thereof. Upon the issues thus made a hearing was had resulting in a decree dismissing the complaint for want of equity. To reverse this decree, the plaintiffs appeal.

The evidence shows that the defendants, Fred L. Ackmann, Frederick J. Ackmann, and Harriett L. Ackmann, are the owners of the real estate designated in the record as tracts A and B, and the plaintiffs are neighboring property owners. The plaintiffs' property and those two tracts are located in a restricted residential area in the northeastern part of the City of Elgin, designated as "A Residential" by a zoning ordinance passed by the City Council of the City of Elgin on January 30, 1928. The validity of this ordinance is not questioned.

On the tract designated as "tract A" is a two-story frame barn which was moved to its present position sometime in 1915 and which has been used by the defendants in their business as carpenters and contractors since that time. There is a conflict in the evidence as to what constituted the contents of this building in 1928 and, particularly, what machinery was located therein prior to April, 1947. On the tract designated as "tract B," prior to 1948 there was a single dwelling. This was occupied by one family. In December of 1948, the defendants erected a building on this tract which extended across it to the barn located on "tract A." This building is approximately 50 feet north and south and 20 feet east and west and is now being used by the defendants as a garage for their trucks and for the storage of certain materials and equipment. The defendants erected this building without a written permit from the Commissioner of Public Health and Safety of the City of Elgin, as required by an ordinance of the city.

Counsel for appellants contend that the evidence discloses that the use to which appellees' property was being put in 1918 was not a nonconforming use but should the court conclude it was that then the evidence establishes that the present use is not a continuation of said nonconforming use but a new and a different

3

use. It is also insisted by counsel that the new building constructed in 1948 without a building permit as required by ordinance was built in violation of the provisions of said zoning ordinance.

Counsel for appellees insist that in 1928, when the zoning ordinance was passed, the barn on the premises of appellees housed a shop with power driven machinery and with a person in attendance; that this was a nonconforming use under the zoning ordinance, and that the present use of the property is a continuance of this use and is likewise a nonconforming one.

It appears from the record that in 1928 the City of Elgin adopted a zoning and building code which classified the area in which appellees' property is located as residential and restricted its use. The ordinance, however, contained a provision for the protection of nonconforming users. Section 9 of the ordinance provided that in the "A Residential" district no building or premises should be used and no building should be erected or structurally altered except for a one-family dwelling. Section 11 of that ordinance provides: "Any lawful use existing at the time of the adoption of this ordinance of any building or premises may be continued although such use does not conform to the provisions of this ordinance. Such use may be extended throughout the building provided no structural alterations are made therein. If no structural alterations are made in the building, a non-conforming use of such building may be changed to any other use permitted in the same district as that in which the use existing at the time of the adoption of this ordinance is permitted. Whenever a non-conforming use of a building or premises has been changed to a conforming use or a more restricted use, such use shall not thereafter be changed to a less restricted use. If a non-conforming use is ever discontinued for a period of ninety (90) days, any future use of such building or

4

premises shall conform to the provisions of this ordinance. . . ."

To establish a nonconforming use under the terms of this ordinance, the ordinance requires that the building or premises must have been devoted to such nonconforming use previous to January 30, 1928. It must, therefore be determined just whether the use to which the property was put on January 30, 1928, was conforming or nonconforming, and if it appears that it was nonconforming, then whether there has been an abandonment of the nonconforming use and the establishment of a new and different use.

The evidence discloses that appellee Fred L. Ackmann was a carpenter contractor and acquired part of the property involved in this proceeding in 1901 and used the barn thereon as his carpenter shop. In 1915, Fred L. Ackmann acquired the balance of the real estate in question and moved the barn to the corner of the lot, its present location. At this time the shop contained a work bench, hand tools, and was used for storage purposes.

Fred L. Ackmann did not testify, but his son, Elmer W. Ackmann, and also his grandson, Frederick J. Ackmann, both testified that a gasoline hand-cranked engine, a grinder, lathe and cutoff saw were in use in the barn or carpenter shop prior to 1928, and that the gasoline motor was used to operate some of this power machinery. There is no proof as to the number of men employed in 1928, but it does appear that either Fred L. Ackmann or his son Elmer was in charge of the carpenter shop and that it was used for a meeting place for the men employed by Mr. Ackmann and was used for fabricating needed materials and as a housing place for tools and equipment. Notwithstanding the testimony of Alfred Klinder to the effect that he was a carpenter and worked for Mr. Ackmann from 1912 to 1932; that he was in the barn or carpenter

5

shop every morning when working; that the barn was not used for machine purposes and that he observed no machinery therein, and notwithstanding the testimony of some of the other witnesses along this same line, we believe the weight of the testimony is to the effect that the use of this property, prior to the enactment of the ordinance, was a nonconforming use.

The use made of this shop and premises was a lawful use at the time of the adoption of the ordinance and, according to its express provisions, appellees had a right to continue such use. The question of fact for determination is whether the present use of the property is a continuation of this nonconforming use or a new and different use.

The evidence is that in 1947 a heavy pole to support electric wires and a transformer were installed, together with a three-phase 220 volt electrical system. Some new machinery was installed, and what was formerly a carpenter shop containing a regulation carpenter's work bench, hand tools, and a gasoline engine which was occasionally used to operate a table saw, grinder, and lathe, was transformed to a somewhat modern mill equipped with modern electrically driven machinery and turning out mill work of all kinds used in the building trades.

Homer Price testified that his property is 15 feet from this carpenter shop, or mill, as he calls it; that prior to April, 1947, when the electric power was installed, he heard no noises but that since then he has been disturbed by "high squeal" noises from the saw; that dust coming from the shop covers his premises; that he heard the saw operating as late as eleven o'clock in the evening and carpenters hammering on Sundays and holidays and at night.

Harold Thurnau testified that he had lived on property adjoining the Ackmann's since 1945; that he was in the barn prior to 1947 and saw no machinery; that

6

during this time, 1945 to 1947, the only noise he heard was the coming and going of trucks; that since 1947 he has heard machinery operating there, heard noises from the operation of the saw, joiner and shaper in the morning and at night, and that these noises disturbed him.

Harold Rapalee testified that the back of his lot is just north of the Ackmann barn and that he had lived there 28 years; that when he first moved there he heard a gasoline motor running on rare occasions; that from 1930 to 1940 he heard no noise from any machinery in the old barn, the only noise he heard was made by a truck coming in or going out; that since the new frame building was constructed, he has heard noises continually from the barn, noises made from saws and planers, and that he heard these during working hours, in the evening, and, occasionally, on Sundays.

Joseph Day testified that he had lived on property adjoining the Ackmann barn for 11 years; that he was in the barn with Fred Ackmann in 1939 and saw a carpenter's work bench but no power tools and no machinery; that until April, 1947, he heard no noises except the truck going in and out; that shortly after April, 1947, when the heavy power line was installed, he heard noises from a joiner, planer, hand saw, crosscut saw and lathe; that these noises were high piercing and vibrating "like a sour note from a circular saw" and disturbed him. He also testified that occasionally there was some dust.

Elmer W. Ackmann testified that prior to 1947 the gasoline motor was operated several times a week, but that he did not operate the shop full time; that there is now a man there running the shop from 8:00 a.m. until 4:30 p.m. every day except Saturday and Sunday; that the shop is manned continuously but the machines are not used continuously but just as occasion requires;

7

in addition to the one man he employs to operate the shop, he employs eleven other men for outside work; that besides the electric motor, he has a Duro-James table saw, a power grinder, wood-turning lathe, Delta band power saw and Delta drill press and floor sanding machines, all operated by an electric motor and that these tools are used to make anything that pertains to carpenter work and remodeling. This witness further testified: "Some dust is produced by some of the machines. There is no pipe leading from the machine to the outside, that permits some dust or foreign substances to go to the other lots. There is a great deal of saw dust produced, but all is swept up and put in containers and given to garages or hauled to the dump. . . . The work in the shop increased after 1947 only as conditions warranted. New equipment was more convenient and more economical. We fabricate this stuff by power and by hand. The work has increased possibly in every line. The reason we put in 220 volt wires was because the other was inadequate."

Harry E. Lange testified that this shop, at the time of the hearing, had modern, up-to-date equipment put in in 1927, and Henry Groenan testified that the modern equipment consisted of a circular saw, a band saw, a sander, grinder and planer all powered by electric motors and, although this witness lives on adjoining property, he never heard any noises from the shop at any time since the modern equipment was put in.

We have been unable to find and counsel has not called our attention to any case directly in point. In *De Felice v. Zoning Board of Appeals,* 130 Conn. 156, 32 A. (2d) 635, 147 A. L. R. 161, it was held that the installation of a "wet sand classifier" in a commercial sand pit, previously operated by the so-called "dry screening method," amounted to an extention of the nonconforming existing use, inasmuch as the new "wet sand classifier" method not only excavated the sand

but would also wash and assort it according to sizes. In its opinion, after referring to the two methods, the court said that the "wet sand classifier" process was a substantial departure from the dry method of cleaning sand. In the course of its opinion, the court stated that the fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not exclude it from the category of an "existing use," provided these are ordinarily and reasonably adopted to make that use available to the owner and the original nature and purpose of the undertaking remain unchanged.

█ In the instant case, the record convinces us that the interior of this barn or carpenter shop has undergone substantial changes since the adoption of this zoning ordinance. At that time this shop contained a work bench, hand tools, and to which a portable gasoline engine had been moved. It was used for storage of tools and a meeting place each morning and evening for the employees of Mr. Ackmann. There was some carpenter work done there, it is true, but, by the installation of electric power and new machinery, the original nature and purpose of this shop has undergone such a decided change as to exclude it from the category of an "existing use" as defined by the authorities.

Appellants also contend that the building constructed in December of 1948 is in violation of the zoning ordinance of the City of Elgin in that no written permit was obtained from the Commissioner of Public Health and Safety as provided in said ordinance; that said building was constructed across two lots; that such building covered a larger portion of the area of the lot than permitted in said ordinance, and that said building was of such a nature as to come within the definition of a structural alteration of a nonconforming

9

use as defined in section 1, paragraph 34 of said ordinance.

Appellees claim that this construction does not violate the zoning ordinance in question in that the said ordinance provides that any lawful use existing at the time of the adoption of this ordinance of any building or premises may be continued. It is the position of counsel for appellees that inasmuch as these premises were being used prior to the adoption of the zoning ordinance as storage space for materials and equipment, the mere fact that they have now constructed a building in which to house their equipment and to store materials previously left in the open is not a violation of the ordinance.

The record discloses that there previously existed a small shed, approximately 10 feet by 10 feet, on tract B which was used as a garage by the defendant, Frederick J. Ackmann, and the space between this shed and the barn was used to store some lumber and equipment used in the business of the defendants. Appellees removed this old shed, and on the premises where it stood, together with the space used for storage, a new building was erected in December, 1948. The dimensions of this new building are approximately 50 feet by 20 feet, and said building is located on both tracts A and B and adjoining the barn, shop or mill of appellees. This building is used as a garage for the two trucks used in defendants' business, a station wagon owned by defendant Elmer W. Ackmann and a pleasure car owned by the defendant Frederick J. Ackmann and, also, as a storage space for materials and equipment used in defendants' business. This building was constructed with five stalls, four of which are used to house the motor vehicles mentioned above and the fifth is used for storage.

██ Section 1, paragraph 34, of the ordinance defines a structural alteration to be a change in any of the

supporting members of a building, excepting such alterations as may be ordered for the safety of the building. This building covers the open space between the south wall of the woodwork shop and the garage of the defendant Frederick Ackmann, and its walls are ten or twelve feet high. This space, from the time the business was originally established many years before, had been devoted to the needs of the defendants' business for the storage of building materials and was a nonconforming use of the premises which was permitted under the terms of the ordinance. The nonconforming use exception in the ordinance applies not only to the buildings affected, but also to the premises. What appellees did here, however, was to destroy the old building and replace it with an entirely new one covering much more space. This was prohibited by the zoning ordinance, and the city officials so considered it by refusing to issue a permit. Appellees proceeded, however, to improve their premises as they desired. The City took no steps to prevent them. Appellants were so located that they had a special interest which they had a right to protect and that is what they seek to do in this proceeding.

We have examined the photographs in this record and the plat disclosing the layout in the shop or mill. We have read the record with care and, in our opinion, the weight of the evidence sustains the allegations of the complaint and appellants are entitled to the relief sought.

The decree of the circuit court is therefore reversed and this cause is remanded with directions to enter a decree in accordance with the prayer of the complaint.

*Reversed and remanded with directions.*