Village of Lake Bluff, a Municipal Corporation, Plaintiff-Appellee, v. Fred H. Horne, Defendant-Appellant.

Fred H. Horne and Janice B. Horne, Counterclaimants-Appellants, v. Village of Lake Bluff, a Municipal Corporation, Counter-Defendant-Appellee.

Gen. No. 11,309.

Second District, Second Division.

February 8, 1960.

Released for publication February 25, 1960.

Snyder, Clarke, Dalziel, Holmquist, and Johnson, of Waukegan (Lewis D. Clarke, of counsel) for defendant-counterclaimants-appellants.

McClory, Bairstow, and Anderson, of Waukegan (Robert McClory and David K. Anderson, of counsel) for plaintiff-appellee.

JUSTICE WRIGHT delivered the opinion of the court.

The Village of Lake Bluff, a municipal corporation, hereinafter referred to as the plaintiff, filed on September 20, 1956, a complaint in chancery against Fred H. Horne, hereinafter referred to as the defendant. Plaintiff prayed for a temporary and permanent injunction to restrain further construction on defendant's building and for a mandatory injunction ordering defendant to alter said building to conform with the plaintiff's zoning ordinances, in accordance with the conditions upon which the plaintiff issued a building permit to defendant. Defendant and his wife, Janice B. Horne, who are the owners of the house and real estate in dispute, filed a counterclaim praying that plaintiff be restrained from interfering with defendant's building or the remodeling of it. On July 14, 1958, the trial court entered a decree finding the equities in favor of the plaintiff, granting a mandatory injunction requiring defendant to alter his building to comply with the zoning ordinances of the plaintiff and dismissing the counterclaim for want of equity. Defendant takes this appeal from the entire decree.

The building involved in this proceeding is a two story, frame, one family dwelling located at 541 Prospect Avenue, Lake Bluff, Illinois, and is owned in joint tenancy by defendant and his wife. At the present time the building is 46½ feet long, north and south, and 43¼ feet wide, east and west. It is located partly on lot 13 and partly on lot 14, each lot has a width of 25 feet. Defendant also owns lot 15, which has a width of 25 feet and adjoins lot 14 on the west. The portion of the building situated on lot 13 is 46½ feet long and 22½ feet wide; and that portion of said building situated on lot 14 is 32¼ feet long and 20¾ feet wide. The combined width of said lots 13, 14 and 15 is 75 feet and each lot has a depth north and south of 66 feet. The major portion of defendant's house proper is located on lot 13.

345

From June 30, 1908, to April 6, 1922, lots 14 and 15 were owned by Chicago Title and Trust Company as trustee. From April 6, 1922, to December 1, 1943, lots 14 and 15 were owned by Annie M. Mennie and Addie R. Sprague, or the survivor of them. From May 10, 1911, to July 1, 1930, lot 13 was owned by Ethel Lou Appleton. From July 1, 1930, to December 1, 1943, lot 13 was owned by William Eldredge Appleton. From May, 1911, to December, 1943, the entire building was situated on lot 13 and during all that time the east wall of the projection in question was 2½ feet from the east line of lot 13.

Plaintiff and defendant refer to the portion of the house in dispute as "the projection" and herein we will use this same terminology. The projection is about 2½ feet wide and 14½ feet long. The projection is one story high and has a slanting roof back to the main east wall of the building.

On December 1, 1943, Marion Scott purchased lot 13 from William Appleton and lots 14 and 15 from Annie M. Mennie. At that time the entire building was still situated on lot 13 and had a side yard on the east side of 2½ feet. On September 13, 1945, Marion Scott applied for and obtained a permit to demolish and reconstruct the projection. Shortly thereafter, Marion Scott demolished and rebuilt the projection in accordance with the permit and, at that time, the entire building was still situated on lot 13 and it had a side yard on the east side of 2½ feet.

Sometime thereafter, but prior to July 21, 1948, Marion Scott erected a garage on lot 14 and constructed a breezeway connecting the garage to the building on lot 13. Prior to that time, the entire building in question was situated on lot 13. In 1948, the defendant and his wife purchased the house and lots 13, 14 and 15 from Marion Scott.

During all of the time that the defendant has owned the property, part of the projection was devoted to a

346

utility room and part to a kitchen. The part of the utility room within the projection contained the heat circulating pump, most of the heating boiler, electrical, gas and water services and sewer connection. The part of the kitchen within the projection contained the sink, cabinets and other kitchen equipment.

In 1911 that part of the projection which is now a part of the utility room was a bathroom with the east wall of the bathroom being the east wall of the projection in the same location as it now is. In 1911, that part of the projection which is now a part of the kitchen was not enclosed but was an open porch with the east line of this porch in the same location as the east wall of the present kitchen. The house remained in this condition until 1925. At that time, Norman Appleton remodeled the building by changing the bathroom to a utility room and installing a heating plant in the same location as the present heating plant and built a chimney. He also made the porch into a coal bin with its east line in the same location as the east line of the porch and the east wall of the coal bin was in the same location as the present east wall of the kitchen.

In 1952, defendant enclosed the breezeway and added it to the living room. Defendant contends this work was done pursuant to a permit and plaintiff contends that a permit for this particular work was not issued until after the work was completed. Also in 1952, defendant's kitchen was tiled, painted and redecorated and a new kitchen sink, disposal, dishwasher and formica counters installed. The dishwasher, counters, cabinets, new kitchen sink and disposal were all located in the projection. Defendant testified that the cost of this construction was between $8,500 to $9,000.

In 1952, plaintiff's Building Commissioner, Mr. Kuhlman, informed defendant that the projection was in violation of plaintiff's side yard ordinances because

it was too close to the east lot line and that no further construction could be done on the premises until the projection was removed.

The defendant early in 1956 contemplated further remodeling of his house and in May 1956, he talked with Mr. Kuhlman, the Building Commissioner, in reference to this work. The defendant did not have the plans at this time but only sketches which he showed the Building Commissioner. The commissioner told him that the projection was too close to the lot line and would have to be removed. The defendant testified that he discussed the removal of the projection with Robert McClory, attorney for the plaintiff, by telephone and that Mr. McClory told him this was a non-conforming use and if he did not build beyond it, there would be no difficulty. McClory admitted a conversation but denied that he told the defendant that it was a non-conforming use. McClory then called Kuhlman and told him of his conversation with the defendant. Defendant testified that he called Kuhlman and inquired about the permit and that Kuhlman said the projection would have to be removed before a permit would be issued.

On June 14, 1956, defendant filed with plaintiff an application for a building permit and plans showing the proposed construction. The application and plans were delivered to Kuhlman at his home that evening or the next evening. On the evening of June 15, 1956, defendant called Kuhlman at the latter's home and inquired as to what was holding up the issuance of the permit. Kuhlman told defendant the projection was in violation of the side yard provisions of plaintiff's ordinances and would have to be removed before a permit would be issued.

Defendant then called McClory and advised him that Kuhlman was being arbitrary in his refusal to issue a permit, that Kuhlman wanted defendant to revise his

348

plans, and that defendant was leaving on his vacation the next day and could not get a new set of plans prepared in time. McClory said he was sure that Kuhlman would permit defendant to change the plans on their face because he, McClory, had recently made an addition to his own home and had to change the plans as originally submitted and that he had been permitted to change the plans on their face. McClory then asked defendant if he would comply with the building and zoning regulations and defendant said he would. McClory then called Kuhlman and reported the conversation to him.

Defendant called Kuhlman again that evening and advised him that McClory had said the projection was a non-conforming use. Kuhlman informed the defendant that McClory was not running the building and zoning department and again told defendant that a permit would not be issued unless the projection was removed. Defendant then informed Kuhlman that he wanted to get the construction started because he was leaving on his vacation and wanted to be sure the work would be completed when he returned. Kuhlman agreed it would be all right to start the construction before the permit was issued if defendant would authorize his contractor, Mr. Shields, to make the necessary changes on the face of the plans. Defendant agreed he would order Shields to pick up the plans and make the necessary changes on them, and Kuhlman then gave defendant permission to start the construction immediately.

The next morning, June 16, 1956, defendant talked to Shields, and instructed him to do whatever was necessary to have the building completed by September. Defendant then left on his vacation. Shields picked up the plans but did not return them immediately. After a few days, Kuhlman sent word to Shields to bring in the corrected plans. Shields then

349

wrote "to be removed" and "area to left of dotted line to be removed" on the part of the plans showing the projection, and returned the plans to Kuhlman on the weekend immediately preceding the 4th of July. Kuhlman issued the permit on July 5th. Defendant contends that Shields made the changes in the plans on the threat from Kuhlman that if he did not do so the work would be stopped. Defendant contends that Shields never discussed these changes with him until in September when the defendant had returned from his vacation and further that defendant never authorized the change in plans.

On or about September 14, 1956, Mr. Grost, the Deputy Building Commissioner, went to the premises and asked defendant when the projection would be removed. Defendant told Grost that he did not intend to remove the projection. Six days later, on September 20, 1956, plaintiff filed its complaint herein.

Defendant contends that the projection is a nonconforming use because it has been in its present location since before 1911, and was there when the original side yard ordinances were adopted; that plaintiff is estopped to enforce a violation of the ordinance; that a mandatory injunction is an extra ordinary remedy and should not be granted in this case because no damage is proven to have been suffered by the plaintiff and it has been proven that great damage will result to the defendant. Plaintiff contends that the projection is not now and never has been a valid non-conforming use; that the permit was issued on the condition that the projection be removed and since defendant accepted the benefits of the permit he must comply with the conditions upon which it was issued.

Plaintiff and defendant have both cited and quoted the various zoning ordinances of the plaintiff's defining a lot and concerning the side yard restrictions and a non-conforming use, in force from 1922 to the present time. The ordinances which are pertinent for an

350

understanding and determination of this case are as follows:

## ORDINANCE DEFINING LOT

"Lot: A parcel of land used or suitable for occupancy by one main building or one main use with permitted incidental buildings and providing open spaces as required by this Ordinance. A lot may be land so recorded on the records of the Recorder of Deeds of Lake County, Illinois, but it may include parts of or a combination of such lots when adjacent to one another provided such land is used for one improvement."

## ORDINANCES WITH REGARD TO SIDE YARD RESTRICTIONS

In force February 1931 to November 1954.

"Section 4. Side Yard. On each side of the building there shall be a side yard having a width of not less than ten (10) percent of the width of the lot."

In force November 1954 to date.

## "A-A" RESIDENT DISTRICT REGULATIONS."

"Side Yard: On each side of the building there shall be a side yard having a width of not less than five (5) feet and a combined total of side yard of not less than twenty percent (20%) of the width of the lot."

## ORDINANCES WITH REGARD TO NON-CONFORMING USE

In force February 1931 to July 1947.

"The lawful use of a building or premises existing at the time of the adoption of this

351

ordinance may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the same building or the same premises lawfully acquired for that use previous to January 8, 1924, but subject to the height and area regulations of the District in which it is located."

In force July 1947 to date.

"The lawful use of a building or premises existing at the time of the adoption of this amending ordinance may be continued (except war-time uses authorized under temporary permits) although such use does not conform with the provisions hereof, and such use may be extended throughout the same building or the same premises lawfully acquired for that use previous to January 8, 1924, but subject to the height and area regulations of the District in which it is located."

 A non-conforming use, within the meaning of zoning regulations has been defined as the use of a building or land that does not agree with the regulations of the district in which it is situated. 58 Am. Jur., Zoning, Sec. 146. An entire tract is generally regarded as within the exception of an existing non-conforming use, although the entire tract is not so used at the time of the passage or effective date of the zoning law. 58 Am. Jur., Zoning, Sec. 151. The right to a non-conforming use is a property right and a governmental body is not authorized to take away or limit a person's right to make any use of the property which was lawful at the time it was acquired, except in such ways as may be necessary for the public health, comfort, safety or welfare. Schneider v. Board of Appeals of City of Ottawa, 402 Ill. 536, 84 N.E.2d

428, Western Theological Seminary v. City of Evanston, 325 Ill. 511, 156 N. E. 778.

Plaintiff's zoning ordinances, supra, define a nonconforming use as the lawful use of a *building or premises* existing at the time of the adoption of the ordinance which may be continued, although such use does not conform with the provisions of the ordinance. The definition of a non-conforming use as used in plaintiff's zoning ordinances applies to a building *or* premises. The premises in the instant case were originally 25 feet wide and later changed by the acquisition of additional land to a total of 75 feet.

On September 13, 1945, Marion Scott applied for and obtained a building permit to demolish and reconstruct the projection. Shortly thereafter, she completed the alterations in accordance with the building permit and the entire building was still situated on lot 13 and had a side yard of 2½ feet on the east side. Sometime thereafter but prior to July 21, 1948, Marion Scott erected a garage on lot 14 and constructed a breezeway connecting the garage to the house situated on lot 13. This was the first time that any part of the building in question was located on lot 14. Lots 13 and 14 each had a width of 25 feet and when Marion Scott thus extended the building on to lot 14 the premises became one lot with a width of 50 feet by virtue of the plaintiff's zoning ordinance then in effect defining a lot. When Marion Scott extended the building on to lot 14 the side yard requirement automatically became 5 feet as plaintiff's zoning ordinance then in effect required a side yard of not less than 10% of the width of the lot. The projection still extended to within 2½ feet of the east lot line after the construction of the garage and breezeway, and the projection was at that time and continued to be a violation of plaintiff's zoning ordinance.

■ Defendant argues that the projection is a nonconforming use. This argument is without merit for

the reason that the building at all times conformed to plaintiff's side yard requirements until the breezeway and garage were constructed on lot 14 and made a part of the building. Until the breezeway and garage were constructed, the entire building had been situated on lot 13. Lot 13 had a width of 25 feet and, therefore, the side yard of 2½ feet complied exactly with the requirements of plaintiff's ordinances.

It seems very clear from the record that the Building Commissioner issued the building permit to defendant for alterations in the house on the definite condition that the projection would be removed. The defendant engaged Willard Shields as his general contractor, for the alterations and improvements to his residence and directed him to apply for and secure a building permit. Kuhlman, plaintiff's Building Commissioner, informed the defendant it would be all right to start the construction before the building permit was issued if defendant would authorize his contractor, Mr. Shields, to make the necessary changes on the face of the plans showing the projection to be removed. Defendant said he would order Shields to pick up the plans and make the necessary changes on them, and Kuhlman then gave defendant permission to start the construction immediately.

██ The building permit was not issued until Shields had personally corrected the plans to indicate that the minimum side yard violation would be eliminated. The plans contained the words, "Area to left of dotted line to be removed." The area to the left of the dotted line was the projection in dispute. On the plans in the space shown as the projection, the words, "To be removed" were inserted. It seems apparent that when the alterations and improvements were made and the projection not removed, there was a deliberate and wilful violation not only of the zoning ordinance itself but also a violation of the definite

condition upon which the building permit was issued. The trial court in its written opinion prudently observed that the defendant did not come into a court of equity with clean hands and that one who violates an ordinance in bad faith has no standing in a court of equity.

 An injunction may be secured, in a proper case, by municipal authorities to prevent a violation of a zoning ordinance. 58 Am. Jur., Zoning, Sec. 188. In Price v. Ackmann, 345 Ill. App. 1, 102 N.E.2d 194, defendants had destroyed an old building and replaced it with an entirely new one covering much more space. This was prohibited by the zoning ordinance of the city involved and the city refused to issue a building permit. Defendants proceeded, however, to improve their premises as they desired. The trial court refused an injunction and other relief. This court on review reversed the trial court and ordered that defendants be enjoined from operating the building in violation of the ordinance and ordered an abatement of the use of the building.

 A mandatory injunction is the only remedy which will enforce plaintiff's zoning ordinances in the instant case. Without this remedy being enforced herein the plaintiff would be helpless and its efforts would be futile in attempting to secure compliance with its lawful zoning ordinances. We are in full agreement with the finding of the trial court that the defendant knew the plaintiff was imposing the definite condition of the removal of the projection as a prerequisite to the issuance of its building permit to the defendant. The trial court in its decree ordered that the portion of the building referred to as the projection, except the brick chimney, be removed on or before June 3, 1963. The trial court has granted defendant a very reasonable length of time in which to

355

comply with plaintiff's zoning ordinances and with the decree entered herein.

The decree of the Circuit Court of Lake County, Illinois, is affirmed.

Decree affirmed.

SOLFISBURG, P. J. and CROW, J., concur.