2018 IL App (1st) 162364

FIRST DIVISION
October 29, 2018

No. 1-16-2364

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ELIAS GIANNAKOPOLOUS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee/Cross-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| GENE ADAMS; ART ADAMS & SONS; THOMAS | ) | No. 11 CH 17516 |
| ADAMS, d/b/a ACT CONSTRUCTION AND | ) | |
| TRUCKING; and ACT CONSTRUCTION AND | ) | |
| TRUCKING, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendants-Appellants/Cross-Appellees. | ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendants Gene Adams, Art Adams & Sons, Thomas Adams, d/b/a ACT Construction and Trucking, and ACT Construction and Trucking (ACT) appeal from the circuit court's order, granting summary judgment in favor of plaintiff Elias Giannakopoulos on his claim under the Illinois Municipal Code (Code) (65 ILCS 5/11-13-15 (West 2010)), permanently enjoining defendants from storing or servicing their business-related vehicles and equipment and from otherwise engaging in any business-related activity on their property located in Palos Park,

granting plaintiff attorney fees, and denying defendants' cross-motion for summary judgment. Plaintiff cross-appeals from the circuit court's order staying the permanent injunction during the pendency of this appeal. For the following reasons, we reverse the judgment of the circuit court granting summary judgment in favor of plaintiff, vacate the order granting plaintiff attorney fees, and enter summary judgment in favor of defendants.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff owns property at 9705 West 125th Street, 9645 West 125th Street, and 9700 West 122nd Street in Palos Park, Illinois (Giannakopoulos property). Defendants' property (Adams property) is located at 9731 West 125th Street in Palos Park, immediately adjacent to the Giannakopoulos property to the west. Defendants' family has owned their property for over 60 years. Before 1954, when the Adams' excavation business began, the Adams property was used for farming and was zoned F under the 1940 Cook County Zoning Code. In 1952, Art Adams Sr., stopped the family farming business and began subdividing the farm for residential development but continued the excavation business on the remaining property up to and after the filing of this lawsuit in 2011.

¶ 4     Plaintiff first purchased a lot in 1996 and eight years later, after acquiring a second lot, demolished an existing house and built a new home. In 2010, plaintiff bought a third lot that directly abuts defendants' property. Plaintiff used defendants' excavating company to excavate and back-fill the foundation for the new house over an eight month period during 2004 and 2005.

¶ 5     Giannakopoulos filed suit on May 12, 2011, to enjoin the defendants' use of the Adams property. In his third amended complaint filed July 30, 2012, plaintiff pled one count seeking injunctive relief under section 11-13-15 of the Code (*id.*). Giannakopoulos alleged that defendants violated section 11-13-15 of the Code in that defendants' property was within 1200

feet of the Giannakopoulos property and defendants were conducting business on their property in violation of the Village of Palos Park's (Village) zoning law. Plaintiff further alleged that defendant Art Adams and Sons operated an excavation, construction, and contractor business on the Adams property and that defendant Thomas Adams, doing business as ACT Construction and Trucking, operated an excavating, trucking, and snowplowing business and uses or has used the Adams property in its course of business. Plaintiff also claims that there was no residential structure located at the Adams property.

¶ 6     Plaintiff alleged that until the Adams property was annexed by the Village in 1989, the property was located in unincorporated Cook County. In 1958, the Adams property was in Cook County's F (Farming) zoning district. In 1960, Cook County eliminated the F district, and the Adams property was re-zoned as an R-3 (single-family residence district) zoning district. In 1989, the Adams property was annexed by the Village and re-zoned into the Village's R-1-A (Single Family Residence) zoning district. Plaintiff alleged that at no time since defendants began operating their excavating business on the Adams property was the property zoned for such use. Furthermore, plaintiff alleged that the current R-1-A zoning of the Adams property does not allow the defendants to operate their excavation business and contractor offices or to store construction vehicles, equipment, and materials either generally or as a special use. Defendants filed their answer, raising the affirmative defenses of waiver, *laches*, estoppel, and statute of limitations.

¶ 7     On October 18, 2013, plaintiff filed a motion for summary judgment, contending that defendants' use of the Adams property was in violation of the Village's zoning code and that the operation of a commercial excavating business and storing commercial vehicles was never authorized under any zoning code. Defendants' response included a cross-motion for summary

judgment wherein defendants argued that the Village annexed the Adams property "as-is," and included an affidavit from Don Jeanes, a Village commissioner from 1991 to 1995 and mayor from 1995 to 1999, who averred that the Village annexed his property and the Adams's property "as-is" in 1989. Jeanes stated that "the Village's long-standing practice has always been to accept all non-conforming properties and uses 'as is' when the Village of Palos Park annexes properties (which it has done several times in the last 30 years)." Jeanes attested to the Adams' decades-long commercial use of the property and stated that this use was "grandfathered in as a legal, nonconforming use during the 1989 annexation pursuant to the Village's standard practice in annexations."

¶ 8    Defendants also raised the affirmative defenses of statute of limitations, waiver, *laches* and estoppel.

¶ 9    Following a hearing on the cross motions for summary judgment, the circuit court issued a written opinion and order on April 24, 2014, denying the cross motions for summary judgment. The circuit court found that there were questions of fact as to whether defendants actually used the Adams property for commercial purposes before or after annexation, which precluded the entry of summary judgment. The circuit court also found that plaintiff failed to move for summary judgment on defendants' affirmative defenses and therefore did not demonstrate the absence of factual dispute regarding those affirmative defenses. Nevertheless, the circuit court found, after considering defendants' affirmative defenses in turn, that none of defendants' affirmative defenses barred plaintiff's claim and denied defendants' motion for summary judgment.

¶ 10    On September 24, 2015, defendants filed their renewed motion for summary judgment. Defendants attached to their motion an affidavit and supplemental affidavit of Patricia Jones,

Village Clerk from 1977 to 1992 and Village Administrator from 1992 to 2010. Jones averred that both before and at the time of the 1989 annexation, defendants' property had been and was being used for commercial purposes. Jones stated she directly participated in multiple Palos Park annexations and that the Village's annexation practice and procedure was to annex property "as is," meaning, "literally, exactly as the real property existed, and was used at the time of the annexation recognizing that the properties and/or their uses would be deemed 'legal' nonconforming uses after annexation." Jones gave specific examples of commercial use properties that were annexed in 1985 that did not conform to the zoning ordinance at the time of annexation, and the Village allowed the use to continue post-annexation for over 18 years thereafter, until the owner voluntarily stopped the nonconforming use.

¶ 11    Jones averred that, as Village Clerk, she participated in the annexation of the Adams's property. At the Plan Commission hearing, Jones personally made representations on behalf of the Village supporting the continued use of nonconforming properties being annexed. Minutes of the Plan Commission reflect that "Mayor Kaptur said the Village would not annex any land if it were to have a negative impact." In a supplemental affidavit filed later in these proceedings, Jones averred that nonconforming uses that were annexed were " 'legalized' by the annexations, so that all aspects of the annexed properties became 'legal' and were 'grandfathered-in' under the Village's ordinances as of the date of annexation" and that "the Village has never pursued any enforcement actions against, what would otherwise be 'violators' of the Village Zoning Code because they were not, in fact, 'violators.' " Jones further stated that the Village did not require a separate zoning hearing for nonconforming property and the Village never issued a formal variance, rezoned, or reclassified any of the nonforming property. Rather, the "legalization" occurred as part of the publicly noticed and open meetings before the Plan

Commission and the Village Council on the annexation itself. Jones stated that the Adams property was annexed "as is."

¶ 12    Plaintiff responded to defendants' renewed motion for summary judgment on February 4, 2015, and filed a cross motion for summary judgment on April 3, 2015, renewing his motion for summary judgment on his claim under section 11-13-15 of the Code (*id.*). Plaintiff argued that the annexation agreement establishes that the Adams property was annexed as R-1-A zoning district. The annexation agreement does not state that the Adams property was annexed "as is." Finally, plaintiff argued that even if the Village annexed the property "as is," it had no legal authority to do so under Dillon's Rule without formal hearings on granting the Adams property a variance, or rezoning or reclassifying the property in compliance with sections 11-13-5 and 11-13-14 of the Code (*id.* §§ 11-13-5, 11-13-14).

¶ 13    The circuit court granted summary judgment in favor of plaintiff in a written order on March 9, 2016. The circuit court found that when the Adams property was annexed by the Village in 1989, it was classified in a R-1-A One-Family Dwelling District and defendants' use of the Adams property for commercial purposes violated the Village zoning ordinance, where there was no indication that the Village passed any variance, rezoning, or reclassification of the Adams property once it was annexed as R-1-A residential. The circuit court also found that the operation of a commercial business on the Adams property also violated any preannexation zoning designations, which were F for farming and R-3 for single family residences. Finally, the circuit court found that even if the Village intended to annex the Adams property "as is" as Jones averred to, the Village did not have the legal authority to do so without holding public hearings on granting a variance, rezoning, or reclassifying the property in accordance with sections 11-13-5 and 11-13-14 of the Code (*id.* §§ 11-13-5, 11-13-14).

¶ 14    With respect to defendants' affirmative defenses, the circuit court adopted its reasoning of the April 24, 2014, order in again denying defendants' motion for summary judgment on the affirmative defenses of statute of limitations, waiver, and *laches* and granting plaintiff's motion for summary judgment as to those defenses. With respect to defendants' estoppel argument, the circuit court indicated that it denied those affirmative defenses because defendants did not provide enough evidence to prove detrimental reliance. However, the circuit court again denied defendants' estoppel argument, finding that any reliance on the representations of the Village that the property would be annexed "as-is" would not be reasonable given that the Village did not have the legal authority to do so.

¶ 15    The circuit court enjoined defendants from operating a commercial business on the Adams property as of April 25, 2016, and ordered removal of the business equipment by the same date. Defendants moved to stay the permanent injunction, which the trial court granted until further order of the court. On August 5, 2016, the trial court awarded plaintiff $272,504.63 in attorney fees. Defendants appeal from the circuit court's March 9, 2016, order granting summary judgment in favor of plaintiff and denying defendants' motion for summary judgment and from the circuit court's subsequent August 5, 2016, order awarding plaintiff attorney fees as prevailing party under the Code. Plaintiff cross-appeals from the circuit court's order staying the permanent injunction during the pendency of this appeal.

¶ 16                                    II. ANALYSIS

¶ 17    Defendants argue that the circuit court erred when it granted summary judgment in favor of plaintiff. We agree.

¶ 18    When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Pielet v. Pielet*,

2012 IL 112064, ¶ 28. However, the filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate the circuit court to render summary judgment. *Id.* Summary judgment is a drastic measure that should be allowed only when the movant's right to that disposition is "clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014); *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. In making that determination, the court construes those matters strictly against the movant and liberally in favor of the party opposing summary judgment. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483 (1998).

¶ 19    The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). To survive a motion for summary judgment, a plaintiff need not prove her case but must present a factual basis that would arguably entitle her to a judgment. *Bruns*, 2014 IL 116998, ¶ 12. "A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts." *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31 (1999). A court should not grant a motion for summary judgment unless the undisputed facts are susceptible to only one inference. *Bellerive v. Hilton Hotels Corp.*, 245 Ill. App. 3d 933, 936 (1993). We review *de novo* a grant of summary judgment and may affirm on any basis in the record, irrespective of whether the trial court relied on that ground or whether its reasoning was correct. *Allianz Insurance Co. v. Guidant Corp.*, 387 Ill. App. 3d 1008, 1026 (2008).

¶ 20    Plaintiff brought this cause of action against defendants under section 11-13-15 of the Code (65 ILCS 5/11-13-15 (West 2010)), which provides, in relevant part:

> "In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. When any such action is instituted by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the municipality, no such action may be maintained until such notice has been given." *Id.*

In short, plaintiff is required to prove that his property is located within 1200 feet of any structure, building or land used in violation of a local zoning ordinance and his property or

person will be substantially affected by the alleged violation. *Bockweg v. Konopiots*, 2013 IL App (1st) 121122, ¶ 7.

¶ 21    For the purposes of this appeal, there is no dispute that the plaintiff owns property immediately adjacent to and within 1200 feet of the Adams property. As to the second element, in his cross-motion for summary judgment, plaintiff argued that defendants' commercial use of the Adams property was in violation of the R-1-A residential zoning ordinance adopted at the time of the 1989 annexation. On appeal, defendants admit that they use the Adams property for commercial purposes but argue, as they did in their cross-motion for summary judgment, that they are not in violation of the R-1-A zoning designation because of the prior legal nonconforming use of the property when it was annexed in 1989, and its continued use thereafter. Defendants argue that the Adams property was annexed "as is," meaning that the Village was aware of the commercial use at the time of annexation, the annexation was approved with the full understanding that the use of the Adams property would be a nonconforming use under the required R-1-A district, and the existing use could continue after adoption of the zoning ordinance.

¶ 22    When the Adams property was annexed by the Village, the Village's annexation ordinance provided that annexed land "shall be classified in the R-1-A One-Family Dwelling District until such time as Council designates the permitted use of the land in accordance with this Zoning Code." Palos Park Code of Ordinances § 1286.08. Accordingly, all annexed land, including the Adams property, was required to be zoned R-1-A, the most restrictive zoning classification, regardless of whether the property or its use conformed to the restrictions of a R-1-A district. There is nothing in the 1989 annexation ordinance that exempts the Adams property or any other property from the required R-1-A zoning classification. Furthermore, there is nothing

in the record to establish that after the Adams property was annexed, any action was taken by the Village to rezone or designate permitted uses within the annexed property, including the Adams property. If the Village considered use of the Adams property to be a prior legal nonconforming use at the time of annexation, as defendants argue, then defendants are not in violation of the zoning code and are entitled to summary judgment.

¶ 23    Plaintiff places much emphasis on the history of the Adams property when it was located in unincorporated Cook County and argues that because the Adams' use may have been in violation of a county zoning provision, the property could not be annexed as a prior legal nonconforming use. We disagree.

¶ 24    The historical use of the Adams property while it was subject to county zoning regulations and whether that use was a prior legal nonconforming use would be relevant if the question before us was whether the use conforms to a county zoning ordinance. In this case, we are dealing with a separate and distinct zoning authority, the Village of Palos Park. We are also dealing with an annexation and an initial zoning designation of annexed property, not a rezoning or zoning amendment by a municipality that previously had jurisdiction over the property. A critical factor in our analysis is that the Adams property is now located in the Village of Palos Park. The use of the property and defendants' attendant property interests have not changed; the zoning authority has changed. When the Village annexed the property in 1989, the Village knew that the Adams property was being used for commercial purposes. It also knew that a substantial number of other properties being annexed did not conform to the restrictions in a R-1-A district, yet the Village affirmatively annexed all of these properties "as-is."

¶ 25    The question of whether the current use is a prior legal nonconforming use depends on the ordinance in question and whether the alleged violation is the result of a new ordinance or an

amendment to an existing ordinance and whether a single municipality is involved. Before the Adams property was annexed, it was located in unincorporated Cook County and was not subject to the Village's zoning jurisdiction. Its commercial use was established. Upon annexation, the property became subject to the Village's jurisdiction for the first time, and for the first time, it was located in a R-1-A district. The Village had the authority to allow the Adams's to continue to use their property as a prior legal nonconforming use because the commercial use was established before the applicable zoning district was created. The goal is to protect the property rights of the nonconforming owner and to restrict a municipality that "is not authorized to take away or limit a person's right to make any use of the property which was lawful at the time it was acquired, except in such ways as may be necessary for the public health, comfort, safety or welfare. [Citations.]" *Village of Lake Bluff v. Horne*, 24 Ill. App. 2d 343, 352-53 (1960).

¶ 26    Where a use that is not permitted under the current zoning ordinance predates that ordinance, the use is typically allowed to continue as a legal nonconforming use. *Taylor v. Zoning Board of Appeals*, 375 Ill. App. 3d 585, 591-92 (2007). "A non-conforming use, within the meaning of zoning regulations has been defined as the use of a building or land that does not agree with the regulations of the district in which it is situated. [Citation.]" *Village of Lake Bluff*, 24 Ill. App. 2d at 352. A use can only continue as a legal nonconforming use if it was legal at its inception. *Id.* at 352-53. If the nonconforming use was not lawfully established, it may not continue regardless of whether it predates the ordinance in question. See *Wright v. County of Du Page*, 316 Ill. App. 3d 28, 39 (2000).

¶ 27    Typically, when a municipality enacts a zoning amendment that adversely impacts an existing use, the owner invokes the principle that the use existed before the amendment and therefore no violation exists as a result of the zoning amendment. Thus, if the current dispute

occurred when the property was located in unincorporated Cook County, the historical use of the Adams property, its location in an F district, and any subsequent zoning amendments would be relevant to the issue of whether the property qualified as a prior legal nonconforming use. However, the historical use of the Adams property while it was subject to county zoning regulations—and whether that use was legal under the county's zoning regime—is not central to deciding the issue here. In this case we are dealing with an annexation ordinance and an initial zoning designation by a separate, distinct zoning authority.

¶ 28 The Adamses did not enter into a formal annexation agreement with the Village, the property was voluntarily annexed. Immediately before the annexation, the Adams property was not subject to the Village's zoning authority and its commercial use was established. The Village annexed the property, knowing that the Adams property was not being used for residential purposes and that it, and a substantial number of other properties being annexed, would not conform to the required R-1-A district regulations. Because it would make no sense to annex property and immediately institute enforcement proceedings, the Village decided to bring the property into the municipality, expand its tax base, and recognize and accept the nonconforming properties "as-is." This was an affirmative act of the Village. Upon annexation, the property came under the Village's jurisdiction for the first time, and for the first time, it was zoned R-1-A. Thus, with an established use, the owners are entitled to claim the status of a prior legal nonconforming use under a zoning ordinance first enacted after the Village acquired zoning jurisdiction. The Village, which possesses the inherent police power to enact zoning regulations that promote the general welfare and impose reasonable restraints on the use of private property (*Hannifin Corp. v. City of Berwyn*, 1 Ill. 2d 28, 34-35 (1953)), had the authority to allow defendants to continue to use their property as a prior legal nonconforming use, and this decision

does not represent a failure to enforce an ordinance as plaintiff contends. In zoning matters, we will not substitute our judgment for that of the Village where it appears that there is a reasonable exercise of its police power. *Zadworny v. City of Chicago*, 380 Ill. 470, 477 (1942).

¶ 29    Unlike *Village of Burr Ridge v. Elia*, 65 Ill. App. 3d 827 (1978), where the owner could not claim a prior legal nonconforming use because the use changed after a zoning amendment, this case concerns an annexation and an initial zoning ordinance, not a zoning amendment. Before annexation the Village knew that the property was not used for residential purposes and that it would not conform to the R-1-A zoning regulations. The record clearly demonstrates that the Village intended to annex the Adams property "as-is." The affidavits of Jones and Jeanes establish the Village's long-standing policy regarding annexation of nonconforming properties.

¶ 30    Patricia Jones provided an affidavit, stating that she was the Village Clerk from 1977 to 1992 and the Village Administrator from 1992 to 2010. She was involved in multiple annexations to the Village, including the annexation of defendants' property. She stated that "Palos Park understood, prior to each annexation, that certain properties and/or their uses were already existing, nonconforming uses under Palos Park's zoning ordinances that would continue 'as is' following annexation." She further stated that she and the Village were aware that defendants were using the Adams property for commercial purposes before and after annexation. The Adams's businesses provided services to Palos Township and the Village, including snowplowing and land grading. Donald Jeanes also provided an affidavit on defendants' behalf. Jeanes averred that he was a Village commissioner from 1991 to 1995 and Mayor from 1995 to 1999. He was aware that the Village had a long-standing practice of annexing all nonconforming property and uses "as is." He further averred that "defendants' use of their property at 9731 W. 125th Street, Palos Park to store their vehicles and equipment was 'grandfathered' in as a legal,

nonconforming use during the 1989 annexation." Jeanes also stated that the Village was aware that the Adams's were operating a commercial business from their property as Gene Adams "frequently used his vehicles and equipment to plow Village streets and roads after snowfalls, as well as to provide other services to the Village." The information provided by Jones and Jeanes remains uncontradicted by plaintiff.

¶ 31    The affidavits of Jones and Jeanes provide more than sufficient evidence to establish that the Village annexed the Adams property, knowing that the use of the Adams property was commercial, the annexed property would be zoned residential, and the annexed Adams property would be nonconforming. Nevertheless, the Village completed the annexation and made the responsible and practical decision to invoke the judicially recognized principle that the use was a prior nonconforming legal use upon annexation. Stated differently, knowing the use of the Adams property, the Village decided to annex the property and allow that use to continue in the residential district established after annexation. We see no reason why the Adamses would voluntarily subject their property to annexation only to be forced out of their property. We similarly see no reason why the Village would annex commercial property and capture its real estate tax base only to thereafter consider the use to be nonconforming and attempt to put defendants out of business. The "as is" policy employed by the Village to allow a use that existed before annexation to continue after annexation makes practical, ethical, and commercial sense. The evidence supports the Adams's argument that the Village annexed the Adams property "as is," that is, as a prior legal nonconforming use and did not intend to require the Adams to restrict, change, or discontinue the commercial use of their property.

¶ 32    Further, contrary to plaintiff's contention, defendants' use of the subject property is not in violation of the Village's ordinances. Section 1286.08 of the Palos Park Code of Ordinances, entitled "New or Annexed Land," provides:

"Submerged land heretofore reclaimed or which may be reclaimed hereafter, and land heretofore annexed or which may be annexed to the Village hereafter and which is not shown on the Zoning Map made a part of this Zoning Code, shall be classified in the R-1-A One-Family Dwelling District until such time as Council designates the permitted use of the land in accordance with this Zoning Code." Palos Park Code of Ordinances § 1286.08.

¶ 33    Based on the affidavits of Jeanes and Jones, the Village clearly knew that defendants were storing equipment and vehicles for their excavating business on their property at the time of annexation. When the Village acquired jurisdiction over the Adams property, it recognized and acknowledged that the property was not used for residential purposes and, to date, has yet to designate "permitted use of the land in accordance with the Zoning Code." Even if the Village amended the existing R-1-A ordinance, the defendants' property interest in the prior legal nonconforming use of the property could not be defeated as long as their commercial use continues. As the movant for summary judgment, plaintiff was required to produce evidence that, if uncontradicted, would entitle him to a directed verdict at trial. *Country Mutual Insurance Co. v. Hilltop View, LLC*, 2013 IL App (4th) 130124, ¶ 24. Normally, the burden of proof is upon the party asserting a right to a nonconforming use to establish the lawful and continued existence of the use at the date of the enactment of the zoning laws pertaining to it. *Taylor*, 375 Ill. App. 3d at 593. However, in this case, given that plaintiff brought this action under section 11-13-15, plaintiff must prove that defendants are using their land in violation of an ordinance. Plaintiff has

16

not established that, at the time of annexation, defendants' use of the Adams property was illegal under the Village ordinances, which is necessary in this case. We therefore find that because plaintiff cannot establish that defendants are using their property in violation of the Village zoning code, plaintiff is not entitled to judgment as a matter of law on his section 11-13-15 claim, and the circuit court's entry of summary judgment in favor of plaintiff was error. Viewing the pleadings, depositions, admissions, and affidavits provided, in the light most favorable to plaintiff, we find that defendants are clearly entitled to judgment as a matter of law.

¶ 34 We also reject plaintiff's argument that the Village did not have the authority to annex the Adams property "as is." We agree with plaintiff that the Village is a non-home-rule unit of government and take judicial notice of such. See *City of Wheaton v. Loerop*, 399 Ill. App. 3d 433, 434 n.1 (2010) (a court may take judicial notice of easily verifiable matters, including a municipality's status *vis-á-vis* home rule powers). Because the Village is not a home-rule unit, the Village possesses only those powers specifically conveyed by the constitution or by statute; thus, such a unit may regulate in a field occupied by state legislation only when the constitution or a statute specifically conveys such authority. *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 694 (2004). Zoning falls within the police power of a municipality and "is properly one of legislative determination." *Daniels v. Hilgard*, 77 Ill. 640, 643 (1875). "A court should not lightly interfere in such case. The [municipality] must have manifestly transcended its province." *Id.*

¶ 35 There is no dispute here that the Village had the authority to annex the subject property and the Village had the authority to annex the subject property "as-is." Section 1280.03 of the Palos Park Code of Ordinances acknowledges the existence of nonconforming uses within the Village. Plaintiff argues that even if the Adams property was annexed by the Village as a legal

nonconforming use, the nonconforming use must have necessarily terminated under section 1280.03 of the Palos Park Code of Ordinances. Section 1280.03 provides:

"The period of time during which the following nonconforming uses of buildings, structures or land may continue or remain is limited to two years from the effective date of this Zoning Code, or of an amendment thereto which causes the use to be nonconforming. Every such nonconforming use shall be completely discontinued and all appurtenant or altered structures shall be removed from the premises at the expiration of the two-year period.

(a) A nonconforming building or structure having an assessed valuation not in excess of one thousand dollars ($1,000);

(b) All nonconforming billboards or outdoor advertising structures not attached to a building lawfully existing upon the effective date of this Zoning Code; and

(c) A nonconforming use of land where no enclosed building is involved, or where the only buildings employed are accessory or incidental to such use, or where such use is maintained in connection with a conforming building. This subsection does not include public or private parking lots established prior to the effective date of this Zoning Code." Palos Park Code of Ordinances § 1280.03.

¶ 36    This provision does not apply in this case. The zoning code was not changed so that the existing use became nonconforming as a result of the zoning amendment. The plain language of this section applies to a zoning change that impacts a structure or use enumerated in the ordinance, none of which are applicable to the facts of this case.

¶ 37    Plaintiff contends that, even if the Village could annex the property "as is," it failed to do so in this case because the recognition of the property as a prior legal nonconforming use did not take place by way of an ordinance that complies with section 11-13-5 of the Code, since no public hearing was conducted to change the zoning applicable to the Adams property. We disagree.

¶ 38    First, there was no variance requested or given. As we explained, the use of the property was recognized by the Village in 1989 as a prior legal nonconforming use. A prior legal nonconforming use is not a zoning classification and it requires no action by the municipality to recognize or designate it as such. It is a property right recognized by law and does not require recognition by ordinance. Second, the Adams property was annexed with an established use, and as long as that use continues, it cannot be adversely affected by the new zoning restrictions imposed by a new zoning authority. Finally, the Village Plan Commission thoroughly discussed the proposed annexation with knowledge that some properties would be nonconforming upon annexation and thereafter recommended approval by the Village council. The Village council was equally aware of these facts when it approved the annexation ordinance at a duly constituted public hearing. We fail to see the merit in plaintiff's argument. "It would be manifestly unjust to deprive the owner of property of the use to which it was lawfully devoted when the ordinance became effective." *City of Aurora v. Burns*, 319 Ill. 84, 96 (1925).

¶ 39    Finally, plaintiff's cross-appeal argues that the circuit court abused its discretion when it granted defendants' motion to stay the enforcement of the permanent injunction until further order of the court. Illinois Supreme Court Rule 305(b) (eff. July 1, 2004) provides that a circuit court "may" stay the enforcement of a nonmoney judgment pending appeal. The power to grant stays is discretionary. *Horvath v. Loesch*, 87 Ill. App. 3d 615, 620 (1980). Under the

circumstances, the circuit court was clearly correct and did not abuse its discretion, in granting the stay.

¶ 40                                    III. CONCLUSION

¶ 41     For the foregoing reasons, we reverse the judgment of the circuit court granting summary judgment in favor of plaintiff, and pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter an order granting summary judgment in favor of defendants. As plaintiff has not prevailed in his action under the Code, he is not entitled to attorney fees. See 65 ILCS 5/11-13-15 (West 2010). We therefore vacate the August 5, 2016, order awarding plaintiff's attorney fees.

¶ 42     Reversed; summary judgment entered in favor of defendants.